Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



RISE OF THE MOORS

ATTN: COURT CLERK

RECEIVED

Address Amendment

JUL 3 0 2021

U.S. DISTRICT COURT
DISTRICT OF R.I.

For Rise Of The MOORS, Jamhal Talib Abdullah Bey et Alia .V. Medford MA State Police, Commonwealth of MA et Alia.

Address for Plantiffs is:
240 Broadway
Pawtucket RI 02860

Jee UCC 1-308
7/27/21
1:29 pm

Page 7 of 7

Attn: Clerk of Court

Cover Letter

This case was faxed but certain pages ~~must~~ failed to go through. I'm not aware of which pages didn't make it. Please re-file these pages.

Joel

7/27/21

1:30pm

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jamhai Talib Adullah Bey, Quinn Khabir EL, Tariff Sharrif Bey, Luchael Por Libertad, Jaimi Rasul Bey

**DEFENDANTS**

Medford State Police, Emily A Karstetter, Trooper Matthew McDevitt, Trooper Ryan Gay

**(b)** County of Residence of First Listed Plaintiff   Morocco
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   MASSACHUSETTS
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [X] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 830 Patent | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | [ ] 835 Patent - Abbreviated | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | New Drug Application | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | [ ] 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | Act of 2016 | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | | Protection Act |
| [X] 195 Contract Product Liability | [X] 360 Other Personal | Property Damage | Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | **FEDERAL TAX SUITS** | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | 26 USC 7609 | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* DEFAMATION
18 USC 241 r 242, ART. 20+21 of Treaty of Peace+Friendship US + Morocco

Brief description of cause:
The STATE POLICE + Commonwealth of IMA violated Constitutional Rights

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $70 MILLION

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 7/20/21   SIGNATURE OF ATTORNEY OF RECORD   ARR RISE OF THE MOORS

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

| Plantiffs: | Court: | Case Number: | Illegally detained at: |
|---|---|---|---|
| Jamhal Talib Abdullah Bey Misidentified as "JAMHAL LATIMER" | Malden District Court | CR001099 | Middlesex House of Correction and Jail |
| Quinn Khabir El Misidentified as "QUINN CUMBERLANDER" | Malden District Court | CR001097 | Worcester County Jail & House of Correction |
| Tariff Sharif Bey Misidentified as "AARON JOHNSON' | Malden District Court | CR001101 | Middleton House of Correction |
| Lucha El Por Libertad Misidentified as "STEVEN PEREZ" | Malden District Court | CR001096 | Middlesex House of Correction and Jail |
| Jamil Rasul Bey Misidentified as "LAMAR DOW" | Malden District Court | CR001102 | Middleton House of Correction |
| Will El Musa Misidentified as "WILFREDO HERNANDEZ" | Malden District Court | CR001098 | Middleton House of Correction |
| Aban El Curraugh | Malden District Court | CR001104 | Middleton House of Correction |
| John Doe 2 | Malden District Court | CR001100 | Worcester County Jail & House of Correction |
| Conald Soliman Quiesqueyano Bey Misidentified as "CONALD PIERRE" | Malden District Court | CR001103 | Middlesex House of Correction and Jail |
| Robert El Don Misidentified as "ROBERT RODRIGUES" | Malden District Court | CR001095 | Middlesex House of Correction and Jail |

Defendants:

Medford Massachusetts State Police

Massachusetts State Trooper Sargent Matthew McDevitt

Massachusetts State Trooper Ryan Casey

Massachusetts State Trooper Mike Sullivan

Massachusetts State Trooper Sargent Burnham

Massachusetts State Trooper Orlando

Malden District Court Judge Emily A Karstetter

THE COMMONWEALTH OF MASSACHUSETTES

AT&T NEWS MEDIA

COMCAST NBCUNIVERSAL NEWS MEDIA

VIACOM NEWS MEDIA

NEWS CORPORATION NEWS MEDIA

CBS NEWS MEDIA

Pro Se 11 (Rev. 12/16) Third–Party Complaint

# UNITED STATES DISTRICT COURT

for the

District of

Division

| | |
|---|---|
| Rise Of The moors | Case No. _____ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| -v- | |
| See Attached | |
| ~~Defendant,~~ (Third–party plaintiff(s) | |
| *(Write the full name of each defendant/third–party plaintiff. If the names of all the defendants/third–party plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |
| -v- | |
| The Commonwealth Of MA Et Alia | |
| *Third–party defendant(s)* See Attached | |
| *(Write the full name of each third–party defendant. If the names of all the third–party defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

# THIRD – PARTY COMPLAINT

## I.      The Parties to This Complaint

### A.      The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                Rise Of The moors
Street Address      P.O. Box 1538
City and County     Pawtucket R
State and Zip Code  RI   02860
Telephone Number    401 600 5529
E-mail Address  *(if known)*

Pro Se 11 (Rev. 12/16) Third–Party Complaint

**B.**     **The Defendant(s)/Third–Party Plaintiff(s)**

Provide the information below for each defendant/third–party plaintiff named in the complaint.  Attach
additional pages if needed.

|  |  |
|---|---|
| Name | Jamhal Talib Abdullah Bey |
| Street Address | 2169 Treble Cove RD |
| City and County | Billerica |
| State and Zip Code | MA 01862 |
| Telephone Number | |
| E-mail Address | |

**C.**     **The Third–Party Defendant(s)**

Provide the information below for each third–party defendant named in the complaint, whether the
third–party defendant is an individual, a government agency, an organization, or a corporation.  For an
individual third–party defendant, include the person's job or title *(if known)*.  Attach additional pages if
needed.

Third–Party Defendant No. 1

|  |  |
|---|---|
| Name | The Commonwealth of MA |
| Job or Title *(if known)* | MALDEN DISTRICT COURT |
| Street Address | 4040 MYSTIC VALLEY PKWY |
| City and County | MEDFORD |
| State and Zip Code | MA 02155 |
| Telephone Number | 781 322 7500 |
| E-mail Address *(if known)* | |

Third–Party Defendant No. 2

|  |  |
|---|---|
| Name | Medford MA STATE Police |
| Job or Title *(if known)* | ~~520 Fellsway~~ STATE POLICE |
| Street Address | 520 FELLSWAY |
| City and County | MEDFORD |
| State and Zip Code | MA 02155 |
| Telephone Number | 781 396 0100 |
| E-mail Address *(if known)* | |

Pro Se 11 (Rev. 12/16) Third–Party Complaint

Third–Party Defendant No. 3

Name MA STATE TROOPER RYAN CASEY

Job or Title *(if known)* MASS STATE TROOPER

Street Address 485 MAPLE ST

City and County DANVERS

State and Zip Code MA 01923

Telephone Number

E-mail Address *(if known)*

Third–Party Defendant No. 4

Name EMILY KARSTETTER

Job or Title *(if known)* judge

Street Address 33 CLARK ST

City and County BOSTON

State and Zip Code MA 02109

Telephone Number

E-mail Address *(if known)*

## II.    Initial Complaint

A.    Identify the initial complaint filed against you and the date it was filed.  Describe the events that gave rise to the plaintiff's complaint, the nature of the claims asserted, and the relief sought.  Attach the complaint as an exhibit.

Conspiracy To commit A Crime
Illegal Possession of firearms
Illegal Possession of Ammunition
Possession of Large capacity magazines
Improper Storage of fire Arms

See ATTACHED

B.    State whether you have filed an answer to the complaint and, if so, briefly summarize what admissions or denials that answer asserted.  Attach the answer as an exhibit.

See Attached affidavit

## III.    Third–Party Complaint

A.    Describe the nature of the relationship between you and the third–party defendant.  Attach any contracts or documents showing the nature of the relationship.

Pro Se 11 (Rev. 12/16) Third–Party Complaint

---

B.   Explain why, if the plaintiff received any judgment against you, you will be entitled to judgment against the third–party defendant for contribution to or indemnification for the amount of damages and costs awarded to the plaintiff. Include the percentage of the plaintiff's recovery that the third–party defendant will be required to contribute. Describe the facts, or relevant provisions of state law, that demonstrate you are entitled to collect from the third–party defendant.

Defamation + Discrimination of National Origin + Deprivation of Rights under Color of Law

## IV.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   7/20/21

Signature of Defendant/Third–Party Plaintiff
Printed Name of Defendant/Third–Party Plaintiff   RISE OF THE MOORS

### B.   For Attorneys

Date of signing:   _____

Signature of Attorney   _____
Printed Name of Attorney   _____
Bar Number   _____

Name of Law Firm _____

Street Address _____

State and Zip Code _____

Telephone Number _____

E-mail Address _____

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

Jamhal Talib Abdullah Bey )
*Plaintiff/Petitioner* )
v. ) Civil Action No.
THE COMMONWEALTH OF MA et Alia )
*Defendant/Respondent* )

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: Middlesex House of corrections .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:

My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per
*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment ❑ Yes ☑ No
(b) Rent payments, interest, or dividends ❑ Yes ☑ No
(c) Pension, annuity, or life insurance payments ❑ Yes ☑ No
(d) Disability, or worker's compensation payments ❑ Yes ☑ No
(e) Gifts, or inheritances ❑ Yes ☑ No
(f) Any other sources ❑ Yes ☑ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4. Amount of money that I have in cash or in a checking or savings account:  $ _____ .

5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

2008 Honda Ridgeline, 2018 Ford Transit

6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

$1700 per month Rent

7. Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

8. Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

Rent is owed At my home, $1700 Credit loans Aprox $9K I cant pay anything because I am Incarcerated.

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXTKIN: Jee  ARR UCC 1-308

*Applicant's signature*

NEXTKIN J EL ARR UCC 1-308

*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
## for the

Robert El Don
"Robert Rodriguez" El Alia )
_____ )
*Plaintiff/Petitioner* )
v. )   Civil Action No.
(MA)Medford State Police et Alia )
_____ )
*Defendant/Respondent* )

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and
that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: Middlesex House Of Corrections MA.
If employed there, or have an account in the institution, I have attached to this document a statement certified by the
appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any
institutional account in my name.  I am also submitting a similar statement from any other institution where I was
incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:

My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment     ☐ Yes     ☐ No
(b) Rent payments, interest, or dividends              ☐ Yes     ☐ No
(c) Pension, annuity, or life insurance payments       ☐ Yes     ☐ No
(d) Disability, or worker's compensation payments      ☐ Yes     ☐ No
(e) Gifts, or inheritances                             ☐ Yes     ☐ No
(f) Any other sources                                  ☐ Yes     ☐ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and
state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4. Amount of money that I have in cash or in a checking or savings account:  $ 0                    .

5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:



6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:



7. Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

4th Amendment

8. Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date:  7/20/21

NEXT KIN: JEL UCC 1-308
_____
*Applicant's signature*

NEXTFRIEND: JEL UCC 1-308
_____
*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

Conald Soliman Quiesqueano Bey
"CONALD PIERCE"                          )
_____        )
*Plaintiff/Petitioner*                   )
                    MA                    )          Civil Action No.
            v.                            )
MEDFORD STATE POLICE                      )
_____        )
*Defendant/Respondent*                   )

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: Middlesex House of Corrections MA
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:


My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment      ❑ Yes          ❑ No
(b) Rent payments, interest, or dividends               ❑ Yes          ❑ No
(c) Pension, annuity, or life insurance payments        ❑ Yes          ❑ No
(d) Disability, or worker's compensation payments       ❑ Yes          ❑ No
(e) Gifts, or inheritances                              ❑ Yes          ❑ No
(f) Any other sources                                   ❑ Yes          ❑ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____ .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:



6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:



7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:



8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:



*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date:  7/20/21

Next Friend: See UCC 1-308
*Applicant's signature*

NEXT FRIEND: See UCC 1-308
*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

Lucha EL Por Libertad
"STEVEN PEREZ"
_____
Plaintiff/Petitioner
)
)
)   Civil Action No. _____
v.
)
MA MEDFORD STATE POLICE
_____
Defendant/Respondent   Et Alia
)
)

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: Middlesex House Of Corrections MA .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:

My gross pay or wages are:  $ _____, and my take-home pay or wages are:  $ _____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | Yes | No |
|---|---|---|---|
| (a) Business, profession, or other self-employment | | ☐ Yes | ☑ No |
| (b) Rent payments, interest, or dividends | | ☐ Yes | ☑ No |
| (c) Pension, annuity, or life insurance payments | | ☐ Yes | ☑ No |
| (d) Disability, or worker's compensation payments | | ☐ Yes | ☑ No |
| (e) Gifts, or inheritances | | ☐ Yes | ☑ No |
| (f) Any other sources | | ☐ Yes | ☐ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____ .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

4th Amendment

6.  Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

4th Amendment

7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

4th Amendment

8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXT FRIEND: J. El UCC 1-308
*Applicant's signature*

NEXT FRIEND: J El UCC 1-308
*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

ABAN EL CUREAH
"Aban El Curreah"
_____
*Plaintiff/Petitioner* )
)
v. )
)
MA (MEDFORD) STATE POLICE MA )
*Defendant/Respondent* )
)

Civil Action No.

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: Essex MIDDLETON(MA)HOUSE OF CORRECTIONS.
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:



My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment      ☐ Yes      ☑ No
(b) Rent payments, interest, or dividends               ☐ Yes      ☑ No
(c) Pension, annuity, or life insurance payments        ☐ Yes      ☑ No
(d) Disability, or worker's compensation payments       ☐ Yes      ☑ No
(e) Gifts, or inheritances                              ☐ Yes      ☑ No
(f) Any other sources                                   ☐ Yes      ☑ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____ .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:



6.  Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:



7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:



8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:



*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXTFRIEND: Jel UCC1-308

*Applicant's signature*

NEXT FRIEND J EL UCC 1-308

*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

Tariff Shariff Bey
"AARON JOHNSON"
_____
Plaintiff/Petitioner

v.

MA MEDFORD STATE POLICE
_____
Defendant/Respondent

)
)
)
)
)

Civil Action No. _____

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: ESSex Middleton OF CORRECTIONS (MA)
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:



My gross pay or wages are:  $ _____O_____ , and my take-home pay or wages are:  $ ____O____ per
*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | Yes | No |
|---|---|---|
| (a) Business, profession, or other self-employment | ☐ Yes | ☐ No |
| (b) Rent payments, interest, or dividends | ☐ Yes | ☐ No |
| (c) Pension, annuity, or life insurance payments | ☐ Yes | ☐ No |
| (d) Disability, or worker's compensation payments | ☐ Yes | ☐ No |
| (e) Gifts, or inheritances | ☐ Yes | ☐ No |
| (f) Any other sources | ☐ Yes | ☐ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4. Amount of money that I have in cash or in a checking or savings account:  $ _____ .

5. Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:



6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:



7. Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:



8. Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXTFRIEND: J El UCC1-308
*Applicant's signature*

NEXTFRIEND: JEL  UCC 1-308
*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
for the

WILL EL MUSA
"WILFREDO HERNANDEZ" )
_____ )
*Plaintiff/Petitioner* )
                              v.  )     Civil Action No. _____
MA MEDFORD STATE Police )
_____ )
*Defendant/Respondent* )

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: ___WORCESTER MA County JAIL___ .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:


My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per

*(specify pay period)* _____ .

3. *Other Income.*  In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment          ☐ Yes          ☐ No
(b) Rent payments, interest, or dividends                          ☐ Yes          ☐ No
(c) Pension, annuity, or life insurance payments               ☐ Yes          ☐ No
(d) Disability, or worker's compensation payments            ☐ Yes          ☐ No
(e) Gifts, or inheritances                                                 ☐ Yes          ☐ No
(f) Any other sources                                                     ☐ Yes          ☐ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____ .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

4th Amendment

6.  Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

4th Amendment

7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

4th Amendment

8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXT FRIEND: J EL UCC1-308

*Applicant's signature*

NEXT FRIEND: J EL UCC1-308

*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

Jamil Rasul Bey
"LAMAR DOW"
_____
*Plaintiff/Petitioner*

v.

MA MEDFORD STATE POLICE
_____
*Defendant/Respondent*

)
)
)
)
)

Civil Action No. _____

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: Middleton Essex House of Corrections (MA)
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:




My gross pay or wages are:  $ _____0_____ , and my take-home pay or wages are:  $ _____0_____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment            ❏ Yes      ☑ No
(b) Rent payments, interest, or dividends                     ❏ Yes      ☑ No
(c) Pension, annuity, or life insurance payments             ❏ Yes      ☑ No
(d) Disability, or worker's compensation payments            ❏ Yes      ☑ No
(e) Gifts, or inheritances                                   ❏ Yes      ☑ No
(f) Any other sources                                        ❏ Yes      ☑ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____.

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:



6.  Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:



7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:



8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXTFRIEND ℄ El UCC 1-308
*Applicant's signature*

NEXTFRIEND J El UCC 1-308
*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
for the

OMAAR MALIK ANTONIO EL
"JOHN DOE2" "OMAR ANTONIO" )
*Plaintiff/Petitioner* )
)          Civil Action No.
MA MEDFORD STATE POLICE et Al/A )
*Defendant/Respondent* )
)

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury: (MA)

1. *If incarcerated.* I am being held at: Middleton Essex House of Corrections
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:

My gross pay or wages are:  $ _____0_____ , and my take-home pay or wages are:  $ ____0____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment        ☐ Yes        ☐ No
(b) Rent payments, interest, or dividends                ☐ Yes        ☐ No
(c) Pension, annuity, or life insurance payments         ☐ Yes        ☐ No
(d) Disability, or worker's compensation payments        ☐ Yes        ☐ No
(e) Gifts, or inheritances                               ☐ Yes        ☐ No
(f) Any other sources                                    ☐ Yes        ☐ No

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____O_____ .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

4th Amendment

6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

4th Amendment

7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

4th Amendment

8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXTFRIEND $ EL UCC 1-308
*Applicant's signature*

NEXTFRIEND: J EL UCC 1-308
*Printed name*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

Quinn Khabir El
"Quinn CUMBERLANDER"          )
_____     )
*Plaintiff/Petitioner*        )
                              )       Civil Action No. _____
v.                            )
MANSFORD STATE POLICE (et al/a)  )
*Defendant/Respondent*        )

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: WORCESTER MA COUNTY JAIL .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name. I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.* If I am employed, my employer's name and address are:



My gross pay or wages are: $ _____ , and my take-home pay or wages are: $ _____ per

*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

(a) Business, profession, or other self-employment          ☐ Yes          ☐ No
(b) Rent payments, interest, or dividends                   ☐ Yes          ☐ No
(c) Pension, annuity, or life insurance payments            ☐ Yes          ☐ No
(d) Disability, or worker's compensation payments           ☐ Yes          ☐ No
(e) Gifts, or inheritances                                  ☐ Yes          ☐ No
(f) Any other sources                                       ☐ Yes          ☐ No

If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ 0  .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

4th Amendment

6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

4th Amendment

7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

4th Amendment

8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

4th Amendment

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: 7/20/21

NEXTFRIEND: J EL UCC 1-308
*Applicant's signature*

NEXTFRIEND: J EL UCC 1-308
*Printed name*

Affidavit of Fact

A **"Writ of Removal"** was filed with MALDEN DISTRICT COURT on July 8, 2021 for the following case numbers:

| Appellation | Ex Rel. | Case Number |
|---|---|---|
| Quinn Khabir El | QUINN CUMBERLANDER | CR001097 |
| Jamil Rasul Bey | LAMAR DOW | CR001102 |
| Tariff Sharif Bey | AARON LAMONT JOHNSON | CR001101 |
| Will El Musa | WILFREDO HERNANDEZ | CR001098 |
| Aban El Curraugh | - | CR001104 |
| - | JOHN DOE #2 | CR001100 |
| Conald Soliman Quiesqueyano Bey | CONALD PIERRE | CR001103 |
| Robert El Don | ROBERT RODRIGUEZ | CR001095 |
| Lucha El Por Libertad | STEVEN PEREZ | CR001096 |
| Jamhal Talib Abdullah Bey | JAMHAL LATIMER | CR001099 |

Copies of each **Writ of Removal** is attached...

I am _____

In Propria Persona / All Rights Reserved




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

# To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is
deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001099

THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Jamhal Talib Abdullah Bey
[JAMHAL LATIMER]

Defendant(s)

# NOTICE OF REMOVAL

Date: **Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. §
1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971):*

> "...when absolutely necessary for protection of constitutional rights, courts of the
> United States have power to enjoin state officers from instituting criminal actions."

It is clearly a violation of claimants constitutionally secured right to not only face their accuser
and have the signed affidavit of fact of claims made against the accused, but pursuant to Article
VI of the constitution (supremacy clause) the constitution for the united States and all Treaties
made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors,
who have issues or disputes with any citizens of the united States, their right to consul shall not be
infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic
of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-
matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate,
except those which pertain to article 21, which applies to the criminal act of killing or wounding a
citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry
Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation
of that Moors constitutionally secured rights. It is written in the treaty:



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

### Treaty-Based Jurisdiction: The Hague and Montreal Conventions

*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956    Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344;* there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: ~~Noxtkin: Julissa Amurru Attorney EL~~ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

# To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is
deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001098

## THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Will Musa
[WILFREDO HERNANDEZ]

Defendant(s)

# NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971):*

> *"...when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."*

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:

Page **1** of **4**



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

### Treaty-Based Jurisdiction:  The Hague and Montreal Conventions
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State);  see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand    nothing    other    than    the    treaty    has    much    relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights.

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.



country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: Next Friend: ꞏꞏꞏꞏꞏꞏꞏꞏꞏ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

# To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001095

## THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Robert El Don
[ROBERT RODRIGUEZ]

Defendant(s)

# NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971):*

> "...when absolutely necessary for protection of constitutional rights, courts of the
> United States have power to enjoin state officers from instituting criminal actions."

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:

Page 1 of 4



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

### Treaty-Based Jurisdiction:  The Hague and Montreal Conventions
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: ~~Shuʿtajen Rafajen Fajan Bey~~ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

## To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.*, 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CROO1101

THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Tariff Sharif Bey
[AARON LAMONT JOHNSON]

Defendant(s)

# NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971)*:

> "...*when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions.*"

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:

Page **1** of **4**



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction:  The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956  Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: ~~Shariakh Raqukan Elijah Bey~~ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

# To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001097

THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Quinn Khabir El
"QUINN CUMBERLANDER"

Defendant(s)

# NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971)*:

> *"...when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."*

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:

Page **1** of **4**




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

**Article 20.** *If any of the Citizens of the United States, or any Persons under their
Protection, shall have any disputes with each other, the Consul shall decide between
the Parties and whenever the Consul shall require any Aid or Assistance from our
Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the
contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the
Country shall take place and equal Justice shall be rendered, the Consul assisting at
the Tryal, and if any Delinquent shall make his escape, the Consul shall not be
answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by
which rights of private citizens or subjects may be determined.* **Head Money Cases,
112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the
United States with a foreign country, constituting a part of the supreme law of the
land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss)
513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app
(CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution
and laws of United States, and it is generally self-operating in that it requires no
legislation by either congress or the state; treaty must be regarded as part of law of
state as much as are state's own statutes, and it may override power of state even in
respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5
Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US
867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.*
**Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction: The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles
of customary international law. A treaty creates obligations in States parties to it that
may differ from those of customary international law, and it generally is immaterial
whether customary international law points in the same or in a different direction
than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees
Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7)
(Permanent Court of International Justice, predecessor of the International Court of
Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the
general norms of customary international law for the purpose of determining which
questions of nationality fall within the domaine réservé of a State); see also Clive
Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more
States have unequivocally agreed to something by treaty, in relation to the matter in
hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco,
8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause
granting jurisdiction if "any . . . citizens of the United States . . . shall have any
disputes with each other." The word "disputes" has been interpreted by the
International Court of Justice to comprehend criminal as well as civil disputes.
France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with
Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat.
458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID
v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating
the claimants civil, national and human rights. As stated in the United States Court of Appeals,
Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race',
as it is a person's nationality that determines their political and legal status, which gives them not
only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF
DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either
race or national origin discrimination. But as is clear, Plaintiffs do not allege the
exact same claims—Plaintiff Rivera alleges national origin discrimination, and the
remaining Plaintiffs allege race discrimination. Therefore, the question is whether
national origin and race discrimination are "substantially related." If so, Plaintiffs
should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under
the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for
national origin are "substantially similar" to those of racial discrimination claims
of a different group. While there may be overlap between the concepts of race and
national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594,
607 (2d Cir. 2016), there is no case law to support the application of the single
filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff
Rivera's charge. The City was placed on notice that Rivera, and others similarly
situated, were alleging discrimination in the layoff process, but only of claims
involving national origin. This finding comports with the goals of the notice
requirement—to put the employer on notice and allow the EEOC to conciliate
claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company,
nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176
subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: ~~Next fexend: Julia D Amurra Odreuys~~ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

## To: **MALDEN DISTRICT COURT**

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC 1 -202: notice, knowledge. An instrument is
deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001103

### THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Conald Soliman Quiesqueyano Bey
[CONALD PIERRE]

Defendant(s)

## NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. §
1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971):*

> "...*when absolutely necessary for protection of constitutional rights, courts of the
> United States have power to enjoin state officers from instituting criminal actions.*"

It is clearly a violation of claimants constitutionally secured right to not only face their accuser
and have the signed affidavit of fact of claims made against the accused, but pursuant to Article
VI of the constitution (supremacy clause) the constitution for the united States and all Treaties
made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors,
who have issues or disputes with any citizens of the united States, their right to consul shall not be
infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic
of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-
matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate,
except those which pertain to article 21, which applies to the criminal act of killing or wounding a
citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry
Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation
of that Moors constitutionally secured rights. It is written in the treaty:

Page 1 of 4



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction:  The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco,
8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause
granting jurisdiction if "any . . . citizens of the United States . . . shall have any
disputes with each other." The word "disputes" has been interpreted by the
International Court of Justice to comprehend criminal as well as civil disputes.
France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with
Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat.
458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID
v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating
the claimants civil, national and human rights. As stated in the United States Court of Appeals,
Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race',
as it is a person's nationality that determines their political and legal status, which gives them not
only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF
DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either
race or national origin discrimination. But as is clear, Plaintiffs do not allege the
exact same claims—Plaintiff Rivera alleges national origin discrimination, and the
remaining Plaintiffs allege race discrimination. Therefore, the question is whether
national origin and race discrimination are "substantially related." If so, Plaintiffs
should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under
the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for
national origin are "substantially similar" to those of racial discrimination claims
of a different group. While there may be overlap between the concepts of race and
national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594,
607 (2d Cir. 2016), there is no case law to support the application of the single
filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff
Rivera's charge. The City was placed on notice that Rivera, and others similarly
situated, were alleging discrimination in the layoff process, but only of claims
involving national origin. This finding comports with the goals of the notice
requirement—to put the employer on notice and allow the EEOC to conciliate
claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company,
nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176
subsection 3002 of the United States code – The United States is a Federal Corporation, not a




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: _____ All Rights Reserved. UCC1-308.

In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.

Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



## To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.*, 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **\*\*To be filed with the applicable case number\*\***

CR000104

### THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Alban El Curraugh

Defendant(s)

## NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971)*:

> *"...when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."*

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction: The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344;* there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a

 

Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: ~~Shestafa Douglas Elijah Bey~~ _____ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.



# To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is
deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.*, 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001102

### THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

Jamil Rasul Bey
[LAMAR DOW]

Defendant(s)

# NOTICE OF REMOVAL

### Date: Date: 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. §
1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971)*:

> *"...when absolutely necessary for protection of constitutional rights, courts of the
> United States have power to enjoin state officers from instituting criminal actions."*

It is clearly a violation of claimants constitutionally secured right to not only face their accuser
and have the signed affidavit of fact of claims made against the accused, but pursuant to Article
VI of the constitution (supremacy clause) the constitution for the united States and all Treaties
made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors,
who have issues or disputes with any citizens of the united States, their right to consul shall not be
infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic
of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-
matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate,
except those which pertain to article 21, which applies to the criminal act of killing or wounding a
citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry
Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation
of that Moors constitutionally secured rights. It is written in the treaty:

Page **1** of 4



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction:  The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: Next-friend's Julius Amara Adams All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*

Page 4 of 4

 

Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

# To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001096

## THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

Lucha El Por Libertad
v.
[JOHN DOE #1]
[STEVEN PEREZ]

Defendant(s)

# NOTICE OF REMOVAL

### Date: Date: 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971):*

> *"...when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."*

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction:  The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State);  see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand   nothing   other   than   the   treaty   has   much   relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

*The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: ~~Shahzen Raneen Elijah Bey~~ All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

## To: MALDEN DISTRICT COURT

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC 1 -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.*, 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** **To be filed with the applicable case number**

CR001100

THE COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

[JOHN DOE #2]

Defendant(s)

# NOTICE OF REMOVAL

**Date: Date:** 25th Day of Dhu al-Qidah 1442: [6 July, 2021]

Pursuant to the Federal Rules of Civil Procedure Rule 11; 28 U.S.C. § 1441; 28 U.S.C. § 1332, the above referenced State case must be litigated in federal court.

Pursuant to the United States Supreme Court decision in *Younger v. Harri, 401 U.S. 37 (1971):*

> "...when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."

It is clearly a violation of claimants constitutionally secured right to not only face their accuser and have the signed affidavit of fact of claims made against the accused, but pursuant to Article VI of the constitution (supremacy clause) the constitution for the united States and all Treaties made shall be the supreme law of the land. It is the constitutional and treaty right of all Moors, who have issues or disputes with any citizens of the united States, their right to consul shall not be infringed. See the Treaty of Amity and Commerce between the Moroccan Empire and the Republic of the united States of America of 1786-7. The treaty granted no personam jurisdiction, subject-matter jurisdiction, nor territorial jurisdiction to the united States over any Moor / Moorish Estate, except those which pertain to article 21, which applies to the criminal act of killing or wounding a citizen of the respective nations, to which, the proper venue is consular courts (also see Sundry Free Moors act of 1790). Thus, any proceedings of a case to which a Moor is a party is a violation of that Moors constitutionally secured rights. It is written in the treaty:




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

**Article 20.** *If any of the Citizens of the United States, or any Persons under their Protection, shall have any disputes with each other, the Consul shall decide between the Parties and whenever the Consul shall require any Aid or Assistance from our Government to enforce his decisions it shall be immediately granted to him.*

**Article 21.** *If a Citizen of the United States should kill or wound a Moor, or on the contrary if a Moor shall kill or wound a Citizen of the United States, the Law of the Country shall take place and equal Justice shall be rendered, the Consul assisting at the Tryal, and if any Delinquent shall make his escape, the Consul shall not be answerable for him in any manner whatever.*

*Treaty is law of land as act of Congress is whenever its provisions prescribe rule by which rights of private citizens or subjects may be determined.* **Head Money Cases, 112 US 580, 28 L Ed 798, 5 S Ct 247.**

*State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*Treaty lawfully entered into stands on same footing of supremacy as do Constitution and laws of United States, and it is generally self-operating in that it requires no legislation by either congress or the state; treaty must be regarded as part of law of state as much as are state's own statutes, and it may override power of state even in respect of great body of private relations.* **Amaya V Stanolind Oil & Gas Co. (CA5 Tex) 158 F2d, cert den 331 US 808, 91 L Ed 1828, 67 S Ct 1191, reh den 331 US 867, 91 L Ed 1871, 67 S Ct 1530.**

*Courts cannot go behind treaty for purposes of annulling its effect and operation.* **Fellows V Blacksmith, 60 US 366, 15 L Ed 684.**

**Treaty-Based Jurisdiction:  The Hague and Montreal Conventions**
*Treaty law also may provide a basis for a State's action independent of the principles of customary international law. A treaty creates obligations in States parties to it that may differ from those of customary international law, and it generally is immaterial whether customary international law points in the same or in a different direction than the treaty obligation. See, e.g., The Tunis and Morocco Nationality Decrees Case, (Great Britain v. France) 1923 P.C.I.J. (ser. B) No. 4, at 24 (Feb. 7) (Permanent Court of International Justice, predecessor of the International Court of Justice ("ICJ"), recognizing that a country's treaty obligations could supersede the general norms of customary international law for the purpose of determining which questions of nationality fall within the domaine réservé of a State); see also Clive Parry, The Sources and Evidences of International Law 33 (1965) ("[I]f two or more States have unequivocally agreed to something by treaty, in relation to the matter in hand nothing other than the treaty has much relevance.").*
https://caselaw.findlaw.com/us-2nd-circuit/1169653.html



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



*The exercise of criminal jurisdiction was also provided for in a treaty with Morocco, 8 Stat. 100, by virtue of a most-favored-nation clause and by virtue of a clause granting jurisdiction if "any . . . citizens of the United States . . . shall have any disputes with each other." The word "disputes" has been interpreted by the International Court of Justice to comprehend criminal as well as civil disputes. France v. United States, I. C. J. Reports 1952, pp. 176, 188-189. The treaties with Algiers, 8 Stat. 133, 224, 244; Tunis, 8 Stat. [354 U.S. 1, 62] 157; and Muscat, 8 Stat. 458, contained similar "disputes" clauses. 9.* **United States Supreme Court REID v. COVERT, (1956) No. 701. Argued: May 3, 1956   Decided: June 11, 1956**

If the state courts continue with their unlawful prosecution and or conviction, they will be violating the claimants civil, national and human rights. As stated in the United States Court of Appeals, Sixth Circuit case: *Peeples v. City of Detroit, 344*; there can be no right of claim based on 'race', as it is a person's nationality that determines their political and legal status, which gives them not only standing at law, but the right to sue and enforce their constitutionally secured rights:

**United States Court of Appeals, Sixth Circuit. PEEPLES v. CITY OF DETROIT 344. Nos. 17-1222. Decided: June 01, 2018**

*Here, Plaintiffs allege that they were all laid off at the same time because of either race or national origin discrimination. But as is clear, Plaintiffs do not allege the exact same claims—Plaintiff Rivera alleges national origin discrimination, and the remaining Plaintiffs allege race discrimination. Therefore, the question is whether national origin and race discrimination are "substantially related." If so, Plaintiffs should be able to piggyback on Plaintiff Rivera's timely filed EEOC charge under the single filing rule, which allows both untimely or never filed claims to be joined.*

*Plaintiffs cite no case law, nor do they argue, that discrimination claims for national origin are "substantially similar" to those of racial discrimination claims of a different group. While there may be overlap between the concepts of race and national origin themselves, see, e.g., Village of Freeport v. Barrella, 814 F.3d 594, 607 (2d Cir. 2016), there is no case law to support the application of the single filing rule between the two distinct groups.*

*Therefore, we find that the remaining Plaintiffs are unable to piggyback on Plaintiff Rivera's charge. The City was placed on notice that Rivera, and others similarly situated, were alleging discrimination in the layoff process, but only of claims involving national origin. This finding comports with the goals of the notice requirement—to put the employer on notice and allow the EEOC to conciliate claims that are shared by more than one plaintiff.*

Moors are not, nor ever have been, a "14th amendment Citizen" of the U.S. Corporation company, nor a "US Citizen", "Federal Citizen" or a "US citizen". See title 28, chapter VI subchapter 176 subsection 3002 of the United States code – The United States is a Federal Corporation, not a




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

country; and the Congressional Records: the proceedings and debates of the 90th Congress, 1st Session, Vol 113 part 12, June 12, 1967 stating that the 14th Amendment is unconstitutional, meaning the united States do not have personam jurisdiction over Moors, branded 'black' and others who are not citizens of the several States. Therefore, any and all issues or disputes between a citizen of the United States and a national or citizen of a foreign state or country, such as Morocco and the Moorish Americans, must be litigated in international court, consular court, or federal court with consul's present. Due to the issue of diversity of citizenship and nationality between Moors and the several States known as 'The United States' and the fact that any litigations in State Courts without prescribed jurisdiction is a violation of said Moors constitutional and treaty rights, thus also raising the federal question, all issues or disputes between Moors and united States citizens must be litigated within federal courts with prescribed jurisdiction. Also see:

> *The act of state doctrine precludes the courts of this country from inquiring into the validity of governmental acts of a recognized foreign sovereign committed within its own territory.* **Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804; Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 3 12, 62 L.Ed. 733; Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726; F. Palicio y Compania, S. A. v. Brush, 256 F.Supp. 481 aff'd, 375 F.2d 101 1 (2d Cir.), cert. denied, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88.**

Any further issues or disputes that the State Courts or other U.S. Citizens may have be litigated in federal court with consuls from the Moroccan / Moorish nation present.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco,

I am: *next friend: Secut Areu williams Bey* All Rights Reserved. UCC1-308.
In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.
Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014): 28 U.S.C. § 1146(a) *only requires that Notice of Removal contain "a short and plain statement of the grounds of removal." It does not require a defendant to provide evidentiary support for the amount in the Notice.*

Page 4 of 4

 

Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

# To: UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

Notice to the agent is notice to the principal, notice to the principal is notice to the agent. UCC I -202: notice, knowledge. An instrument is deemed in law filed at the time it is delivered to the clerk. See *Biffe v. Morton Rubber., Inc.,* 785 S.W. 2d 143, 144 (tex. 1990).

**Case number:** CR001099, CR001097, CR001101, CR001096, CR001102, CR001098, CR001104, CR001103, CR001095, CR001100

COMMONWEALTH OF MASSACHUSETTS

Appellant, Plaintiff, Claimant

v.

"JAMHAL TALIB ABDULLAH BEY, QUINN CUMBERLANDER, AARON JOHNSON, STEVEN PEREZ, LAMAR DOW, WILFREDO HERNANDEZ, ABAN EL CURRAGH, CONALD PIERRE, ROBERT RODRIGUEZ, OMAAR ANTONIO"

Defendant(s)

# AFFIDAVIT OF FACT

**Date:** 10th Dhu al-Hijjah 1442: [20 July 2021]

On Saturday July 3, 2021, eleven Moorish American Nationals were traveling for a group camping trip using I-95 North to get to a private destination. They were exercising their right to travel with their firearms in adherence with the federal peaceable journey law (18 USC § 196A). They were exercising their second amendment right to keep and bear arms, as well as the inalienable right to have a necessary well-regulated militia, which shall not be infringed. The Moors had already filled up gas cans to be able to fuel their gas tanks without alarming the public late at night since they were dressed in camouflage clothing and had on militia gear. While fueling up carefully on the side of the road, state trooper CASEY pulled up behind them to see if assistance was needed. He quickly realized that the men had on camouflage uniforms and bulletproof vests while having dark skin and immediately started questioning them. Jamhal Talib Abdullah Bey promptly approached the trooper peacefully with his hand extended to greet the officer. The Moors proceeded to answer his questions even though they had not been pulled over and are not required to answer questions since militias are to remain unharassed while training. CASEY asked for credentials even though this was not necessary because they hadn't been pulled over and had not broken any laws. Jamhal politely answered the trooper's questions and asked for the supervisor. The state trooper is heard in the video evidence provided by the state,

 Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States. 

Case 1:21-cv-00306-JJM-PAS   Document 13   Filed 08/03/21   Page 73 of 92 PageID #: 159

saying; "The only issue I see here is that none of you have a driver's license." Defendant "ROBERT RODRIGUEZ" provided credentials to the trooper in regards to his driver's license. The Trooper wasn't satisfied with his unwarranted investigation, so he called for backup. Once backup arrived, the troopers began to load their weapons and aimed them at the Moors instead of bringing in their supervisor. Jamhal Talib Abdullah Bey ensured and reassured that the Moors would not be raising or pointing any arms at the troopers, but the troopers remained extremely hostile. The Moors, in fear for their lives, began to wave and flail their hands at other travelers passing by as they yelled for help. The Moors (who never once raised or pointed firearms at anyone) stood there as the troopers pointed multiple loaded weapons at the Moors while they waited for the higher authority for hours. Jamhal provided his phone number so that the troopers could call and speak with him. The troopers blocked the north and south bound sides of the highway and the public could not pass.  At a certain point during the interaction, when Jamhal Talib Abdullah Bey asked what the probable cause was, the response from the trooper he was speaking with was "I don't know". Once licensed drivers presented their information to the state troopers, they should have let them go free, but the Massachusetts troopers continuously proceeded to escalate the situation to unnecessary heights.  In the trooper's probable cause narrative, they themselves admit that probable cause was not found until after reviewing their body camera footage etc.  According to the fourth amendment of the constitution, probable cause needed to have been found from the beginning of the entire incident. *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

The state troopers & news media chose to discriminate against the national origin of the men by violating 18 USC 241 & 242 (Conspiracy against rights & deprivation of rights under color of law.) They also pushed a narrative of the Moors being "extremists, "anti-government", "being above the laws" or "outlaws", "sovereign citizens" and much more which is defamation of character according to the very definition provided in 28 USC 4101. The state troopers, the COMMONWEALTH OF MASSACHUSETTS and the news/media were all conspiring and discriminating against the Moorish Americans by making a mockery of their god given inalienable rights. The incident violated the second, fourth, fifth, eighth & ninth amendments of the constitution as well as 18 USC 241, 18 USC 242, Articles 20 & 21 of the Treaty of Peace and Friendship between the United States & The Empire of Morocco. The Supremacy Clause is a clause within



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



Article VI of the U.S. Constitution also dictates that federal law is the "supreme law of the land." This means that judges in every state must follow the Constitution, laws, and treaties of the federal government in matters which are directly or indirectly within the government's control. Under the doctrine of preemption, which is based on the Supremacy Clause, federal law preempts state law, even when the laws conflict. Thus, a federal court may require a state to stop certain behavior it believes interferes with, or is in conflict with, federal law.

> *State statutory provisions must yield to any applicable provisions of any treaty of the United States with a foreign country, constituting a part of the supreme law of the land.* **De Tenorio V McGowan (CA5 Miss) 510 F2d 92, adhered to (CA5 Miss) 513 F2d 294, cert den 423 US 877, 46 L Ed 2d 110, 96 S Ct 150 and later app (CA5 Miss) 589 F2d 911.**

*The Bill of Rights prevents the tyranny of the majority from taking away the rights of a minority. When a state nibbles on Constitutional rights, who protects the minorities? The federal courts. The Second Amendment protects any law-abiding citizen's right to choose to be armed to defend himself, his family, and his home. At the same time, the Second Amendment protects a citizen's right to keep and bear arms to use should the militia be needed to fight against invaders, terrorists, and tyrants. ...Government is not free to impose its own new policy choices on American citizens where Constitutional rights are concerned. As Heller explains, the Second Amendment takes certain policy choices and removes them beyond the realm of permissible state action.* **Miller v Bonta 2021**

We the people, do not need a license; a license is permission; to keep and bear arms is our constitutional right to do so.

It has also been decided in Chicago v Collins, 51 NE 907 and Freeburg v Dawson 274 F 240 case that; *"A right which is free and open to all is not the subject of a license or tax."*

> *...in District of Columbia v. Heller, 554 U. S. ___, this Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense and struck down a District of Columbia law that banned the possession of handguns in the home.* United States Supreme Court MCDONALD ET AL. v. CITY OF CHICAGO, ILLINOIS, ET AL. (2010) No. 08-1521 Argued: March 2, 2010 Decided: June 28, 2010




Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.

It has also been stated in, Shuttlesworth v. Birmingham, 373 US 262, that; *"If the state converts a liberty into a privilege, the citizen can engage in the right with impunity."*

And; *"There can be no sanction or penalty imposed upon one because of the exercise of a constitutional right."* Sherar v. Cullen, 481 F. 945 (9th Cir. 1973) Spevack v. Klein, 385 U.S. 511 (1967) GARRITY v. NEW JERSEY, 385 U.S. 493 (1967) BOYD v. U S, 116 U.S. 616 (1886) MALLOY v. HOGAN, 378 U.S. 1 (1964)

LICENSE.

*Certificate or the document itself which gives permission.* Aldrich v. City of Syracuse, 236 N.Y.S. 614, 617, 134 Misc. 698. *Permission or authority.* Independent School Dist., Class A, No. 1, Cassia County v. Pfost, 51 Idaho 240, 4 P.2d 893, 897; Monsour v. City of Shreveport, 194 La. 625, 194 So. 569, 571; Platt v. Bender, La.App., 178 ,So. 678, 682. *Authority or liberty given to do or forbear any act.*

## Amendment II

*A well-regulated militia, being necessary to the security of a free state, **the right of the people to keep and bear arms, shall not be infringed.***

*"The Constitution of these United States is the supreme law of the land. Any law that is repugnant to the Constitution is null and void of law."* Marbury v. Madison, 5 US 137

I, Jamhal Talib Abudullah Bey, Et Alia ; rightfully demand that the following "case" numbers CR001099, CR001097, CR001102, CR001101, CR001098, CR001104, CR001100, CR001103, CR001095, CR001096 and these alleged "charge(s)" / claim(s) of possession of a firearm, possession of a large capacity firearm, conspiracy to possess and improperly store firearms, conspiracy to commit a felony etc., be dismissed for the mere fact alone that it is my constitutionally secured right to keep and bear arms supported by the 2nd Amendment of the Bill of Rights of the American Constitution.

Let it be clear for the record that according to Black's Law dictionary 4th Edition, that a "Weapon" is an instrument of offensive combat, used or designed to be used in destroying, or injuring. I, Jamhal Talib Abdullah Bey et alia, being a Moorish American national, guided by the high principles of Love, Truth, Peace, Freedom and Justice, have no intentions on using any arms as weapons or for purposes of destruction, nor offensive combat. According to the same dictionary an "Arm" is



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

anything that a Man takes in his hands or anything that a man wears for his defense, and an insignia of honor.

Let it be known that I, Jamhal Talib Abdullah Bey et alia, was not in possession of any weapons with any intent to cause anyone or anything bodily harm, nor to facilitate an offense, nor to facilitate a felony. Considering I have not committed nor planned to commit any crimes, in the nature of replevin, we demand the return of our firearms and other possessions as it has been unlawfully taken from the nationals. This is a violation of my right to due process of law according to the 5th amendment.

As a matter of public interest and to ensure that I am dealing with a legally and lawfully competent court with prescribed Jurisdiction per Article III and Article I section 8, clause 9 of the American Constitution, I rightfully demand to see the Judges oath or Affirmation to support and defend the constitution for America in regards to this matter. As it has been declared, made known and substantiated in Stone v. Powell 428 US 465, 6 S. Ct 3037, 49 L. Ed. 2d 1067, that state courts like federal courts have a constitutional obligation to safeguard personal liberties and uphold federal law to protect people from encroachment and molestation of our preexisting rights.

Considering the constitution is the supreme law of the land, set at article 6, being a contract, the federal (contract) law is the American constitution. Being an Article III Judge, you are deemed to know law and this case must be dismissed on the grounds that it is in fact my constitutionally secured right to keep and bear arms being a Moorish American national.

If this is a criminal or civil matter, then I rightfully demand to face my accuser and to be informed with the nature of the accusations made against me so that I may properly defend myself. According to the 6th Amendment and under the rule of discovery, I have the right to see the sworn and signed affidavit of the alleged injured party, as well as to know who the injured party is to which I am obligated to provide remedy to. If there is no injured party present nor the agent of the injured party with a contract between the injured party and his/her agent, who also entered into the record a sworn affidavit of claims made against me and can attest to the same, then that stands as prima facia evidence that there is no case. Therefore, the case and the alleged charges must be dropped.

If the Judge does not have his/her oath or affirmation readily available to verify that he/she is in fact an Article III judge with the lawfully prescribed power to adjudicate, then I am lead to the conclusion that this is a private commercial court, to which all



Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the United States.



parties involved with the exception of me, are co-conspirators in attempts to extort finances from me. Thus, chargeable under **Title 18 U.S. Code § 241** - Conspiracy against rights; **Title 18 U.S. Code § 242** - Deprivation of rights under color of law; **Title 18 U.S. Code Chapter 41** - Extortion and threats; **Title 18 U.S. Code § 880** - Receiving the proceeds of extortion; et alia (and others).

If this is an issue between me and the state, then I also demand the contract between me and the state be submitted for the record and my review, that I am supposed to have violated, to be summoned to this commercial court in the first instance.

I have not been presented with any signed affidavit of claims or accusations made against me by an injured party which would lead a grand jury to present an indictment to me. Based on that fact alone, per the 5th and 6th Amendment, my rights to due process have been violated; and this alleged case, these alleged charges and claims must be dropped, dismissed and/or otherwise acquitted.

To be submitted on the "Public Record" as Exhibit A, whereas I state, proclaim, and declare the following to be true, correct, not misleading and not intended to be presented for any misrepresented, 'colored' or improper use or purpose. Whereas I reserve my right to not have to answer to any colorable charges nor appear to any colorable courts, this Affidavit of fact, Quo Warranto, Writ of Replevin and Information et alia. Any bodily presence to any "courts" or tribunals in regard to this matter will be under threat, duress and/or coercion, where jurisdiction will be challenged. This document is to be taken and viewed as a special appearance; as there is no proof that there are any real charges being made against me or my estate.

## UNDER PENALTY OF PERJURY

Under penalty of perjury and persecution from the Moorish nation, do declare and state for the record, to the best of my ability, that all claims and statements made in this affidavit are true, factually based and not made for, nor intended to be used for fraud, misrepresentation, misprision nor usurpation. A Free Moorish American national and citizen of the free National Government of Morocco, I am: Next Kin: El UCC 1-308 . In honor of my Moabite ancestors to time immemorial, exercising the Divine and Common-Law-Right to Jus Postliminii, in accord with the high principles of Love, Truth, Peace, Freedom and Justice.

Treaty of Peace and Friendship of 1787 between the Empire of Morocco and the
United States.

Natkin El UCC1-308

RISE OF THE MOORS

## PROBABLE CAUSE NARRATIVE

1. Trooper Michael R. Sullivan, Massachusetts State Police, submits this probable cause narrative in support of the attached criminal complaint charging the following defendants as described below:

   a. Jamal Tavon Sanders LATIMER (DOB 4/17/92) a/k/a Jamal Talib Abdulleh Bey
   b. Alban el CURRAUGH (DOB 4/12/94)
   c. Quinn KHABIR (DOB 4/15/81)
   d. Robert RODRIGUEZ (DOB 9/22/99):
   e. Wilfredo HERNANDEZ (DOB 8/19/97) a/k/a Will Musa
   f. Aaron Lamont JOHNSON a/k/a Tarrif Sharif Bey (DOB 5/29/92)
   g. Brandon BRITTON (DOB 7/12/03) a/k/a Messiah Bey
   h. John Doe #1 (DOB unknown, refused to be photographed)
   i. John Doe #2 (DOB unknown)
   j. Lamar DOW (DOB 8/24/86) a/k/a Jamil
   k. Conald PIERRE (DOB 12/29/91)

2. This narrative is based upon review of video surveillance, body-worn camera footage, police reports, database queries, and conversations with State Police and other law enforcement officers, among other things. Because this narrative is for the limited purpose of establishing probable cause, it does not recite all facts known to investigators, but only those necessary to accomplish this purpose. Where this narrative refers to conversations, recordings, or documents, it does so in substance and in relevant part.

3. On July 3, 2021, Trooper Ryan Casey of the Massachusetts State Police was working the midnight shift (2300-0700 hours) out of the State Police Danvers Barracks in a fully marked cruiser. At approximately 1:10 am, while traveling on Route 95 NB in the town of Wakefield prior to the North Avenue Exit, Trooper Casey observed a black 2018 Ford Transit van bearing Maine Reg. #834023 pulled over in the break down lane with its hazard lights on. The van was a large conversion-type vehicle that had over 12 seats. Trooper Casey pulled over behind the van and activated his rear emergency lights.

4. Trooper Casey then approached the vehicle on the passenger side and was met by suspect 1, later identified as Jamal Tavon Sanders LATIMER (DOB 4/17/92) a/k/a Jamal Talib Abdulleh Bey who was outside the vehicle. Trooper Casey was wearing a body camera during the entirety of his interaction, which was recorded. LATIMER had a rifle harnessed around his torso, was wearing camouflage army fatigues, and had body armor on. The rifle was loaded and Trooper Casey observed rounds of ammunition through a window in the magazine. Besides LATIMER, two other individuals approached Trooper Casey. Suspect 2, later identified as Aaron Lamont JOHNSON a/k/a Tarrif Sharif Bey was wearing army fatigues, a face covering, and carrying a loaded rifle with visible rounds of ammunition in the magazine. Suspect 3, later identified Alban el CURRAUGH was wearing camouflage army fatigues with body armor.

5. Trooper Casey asked LATIMER what was going on and he responded they were "militia" on their way to Maine from Rhode Island, and that they were trying to limit unnecessary stops by refueling their vehicles on the side of the roadway. It was then

traveling with them. That vehicle was a 2006 Gray Honda Ridgeline bearing Maine Reg. 935711.

6. Trooper Casey then asked if anyone in the two vehicles had any license to operate a motor vehicle and LATIMER indicated that they did not. LATIMER specified that none of them had licenses or any forms of identification on their person and reiterated that they were traveling to Maine from Rhode Island for "training." LATIMER stated they are all from Pawtucket, Rhode Island. Trooper Casey asked for his name and date of birth and LATIMER wrote down "Jamhal Talib Abdullah Bey, a telephone number, 4/17/92." At this time, suspect 2 covered his face with a garment and turned his body away from Trooper Casey. When Trooper Casey presented his notebook for CURRAUGH to write down his information, LATIMER extended his hand and told CURRAUGH that he didn't have to give him anything. CURRAUGH did not provide any information.

7. Trooper Casey then approached the driver's side of the 2018 Ford Transit van and spoke with the operator, Suspect 4, later identified as Wilfredo HERNANDEZ (DOB 8/19/97) a/k/a Will Musa. HERNANDEZ identified himself to Tpr. Casey with an "International Road Travel" I.D. under the name MUSA, Will El (Life Date 08/19/1997) and stated he was "traveling," and not driving the vehicle. Around this time, Sgt. Burnham of the Wakefield Police Department arrived on scene.

8. Trooper Casey and Sgt. Burnham then had further conversation with LATIMER, who stated it was legal for them to travel through the state with the firearms as long as they didn't make any unnecessary stops. When asked if anyone had any sort of FID card or license to carry a firearm, LATIMER replied "No." He went on to state that he previously advised everyone "not to bring anything that can identify us due to the nature of what we're trying to do." LATIMER also told Sergeant Burnham that they were exempt from firearm laws because they were militia. During this conversation, Trooper Casey observed a new suspect (suspect 5, later identified as Quinn KHABIR (DOB 4/15/81)) approach wearing a black ski mask, similar camouflage army fatigues, body armor, with a loaded rifle harnessed on his torso. Additionally, suspect 6 appeared and provided a name of Robert RODRIGUEZ and DOB 9/22/99. RODRIGUEZ was wearing camouflage army fatigues along with body armor and was standing outside of the 2006 Honda Ridgeline. Suspect 7 was also observed as wearing camouflage army fatigues with body armor and a red hood. At this time, other members of the Massachusetts State Police arrived on scene and Trooper Casey temporarily returned the area of his cruiser.

9. A CJIS inquiry of the Maine plate number and VIN number associated with the 2018 Ford Transit van indicated that it was unregistered in Maine, and its registration in Massachusetts was revoked as of 2020. A CJIS inquiry of the Maine plate number and VIN number associated with the 2006 Honda Ridgeline pick-up truck indicated it was unregistered in Maine, and its registration in Massachusetts was cancelled as of 10/19/2020.

10. Sergeant McDevitt, Trooper Orlando, and Trooper Casey then re-approached the group of suspects. LATIMER identified himself as the leader of the "militia." He reiterated that he was traveling from RI to ME and stated he was going to private land up there to train. When asked why they were armed, LATIMER began citing a series of federal laws. He indicated that the vehicles were his. When asked to stow the firearms in the vehicle,

LATIMER refused and stated "we can't do that." LATIMER claimed that asking him to put down his firearms was a violation of his second amendment rights and stated "I'm going to stay armed for my safety just like you are going to stay armed for yours." At this time, no suspect had provided any evidence of a FID card or license to carry a firearm from Massachusetts or any other state despite requests.

11. Trooper Casey knows, based on training and experience, that in order to properly transport firearms across state lines from one state to another state, the owner must be duly licensed or in lawful possession of their firearm in their home state, as well as their destination state, and the weapons must be unloaded and in a secure container and/or completely out of reach of the owner. He also knows Massachusetts law requires that non-residents in possession of rifles and shotguns must keep those firearms unloaded and properly stored.

12. In speaking further with LATIMER, Sgt. McDevitt asked if he had any license to possess the rifle he had on his person. LATIMER responded "you don't need a license in Rhode Island to own a rifle." When advised that they are not allowed to brandish the firearms in Massachusetts while transporting them between Rhode Island to Maine, LATIMER stated they were holding the firearms because they were no longer in the car. LATIMER also claimed they wouldn't have brandished the firearms if Trooper Casey did not put his police lights on. However, Trooper Casey indicated that the suspects were already armed when he responded to the scene, consistent with video footage.

13. At this point, the Troopers returned to their cruisers to further assess the situation. During this time, Troopers Orlando and Casey noticed that a few of the armed men were moving towards the wood line on the side of the roadway. Given their refusal to disarm and the escalating situation, it was determined to move all officers back to a position of cover and create distance and a perimeter. Sgt. McDevitt then attempted to speak to LATIMER again. During that attempted conversation, Sgt. McDevitt heard the sound of a rifle chambering a round in the wood line area. When LATIMER asked if he was free to go, Sgt. McDevitt stated no. When he asked if he was being detained, Sgt. McDevitt informed him yes. When LATIMER was asked to lay down his firearm and surrender, he refused. LATIMER was advised he was being arrested for unlawfully carrying a firearm on at least 4 occasions. At least 5 armed suspects were identified at that time and 8 total suspects were observed from the perimeter.

14. At this point, the Massachusetts State Police shut down both lanes of Route 95, and a standoff ensued between the armed suspects and the Troopers for several hours. During the standoff, RODRIGUEZ and HERNANDEZ who were originally in the wood line area were located by Officer Holliday of the Wakefield Police on North Avenue about a half mile from the location of the standoff. HERNANDEZ was wearing body armor, blue shorts, a T-shirt, had a pistol (later identified as a Taurus G3 9mm semi-automatic pistol) on his person, and had a firearm magazine in his pocket. The other suspect was wearing body armor and camouflage army fatigues. While the suspects initially claimed they were simply jogging in the area, subsequent interviews conducted by the Massachusetts State Police confirmed that they were originally on scene at the standoff and had fled the area through the woods. The two individuals were taken into custody and transported to the State Police Barracks in Andover.

15. After several hours of negotiation, the armed suspects at the scene surrendered. At the instruction of the Massachusetts State Police, the suspects disarmed themselves of weapons and ammunition and told to place those items in the van. Nine of the defendants (all except the "joggers") and two dogs were taken into custody between the two vehicles.

16. Police recovered approximately 10 ballistic vests (body armor) during the arrests of the defendants, as well as camouflage uniforms, and ballistic helmets, and a pair of night-vision goggles, among other things.

17. While on scene, a brief inventory was conducted of both vehicles before they were towed to the Danvers State Police Barracks. The vehicles were first inventoried then later searched pursuant to warrants.

18. Pursuant to the search warrant, officers recovered the following things, among others, from the Ford Transit van:

   a. A CZ P-10C pistol with loaded magazine recovered from the passenger side rear seat

   b. A Glock 44 .22 caliber semi-automatic pistol and loaded magazine

   c. A Ruger 556 5.56 caliber semi-automatic rifle with a loaded 28-round magazine

   d. A Palmetto State Armory PA-15 rifle

   e. A DPMS Panther Arms A15 5.56 caliber rifle

   f. Approximately 630 live 223 caliber rounds of ammunition in a green bag

   g. Approximately 13 magazines loaded with an unknown quantity of ammunition

   h. A sandwich bag filled with .22 caliber ammunition

   i. A box of approximately 150 rounds of 9mm Luger caliber ammunition

   j. 26 12-guage shotgun shells

   k. A box of approximately 140 5.56 caliber rounds of ammunition

   l. A loaded 9mm Luger magazine

   m. A box of approximately 100 12-guage shotgun shells

   n. Seven magazines loaded with an unknown amount of ammunition recovered from a white trash bag under the van's second-row bench seat

   o. Approximately 50 .308 caliber rounds of ammunition

   p. Approximately 20 7.62x51 caliber rounds of ammunition

n. Seven magazines loaded with an unknown amount of ammunition recovered from a white trash bag under the van's second-row bench seat

o. Approximately 50 .308 caliber rounds of ammunition

p. Approximately 20 7.62x51 caliber rounds of ammunition

19. Pursuant to the search warrant, officers recovered the following things, among others, from the Honda Ridgeline:

a. A Remington model 700 .308 Winchester caliber rifle with a Nikon scope recovered in the back seat.

b. A loaded Mossberg model 930 12-guage semi-automatic shotgun (loaded with a 12-guage shell in the chamber) recovered between the front passenger seat and center console;

c. A Glock semi-automatic pistol recovered from the back seat

d. Three loaded 5.56 magazines

e. One loaded .22 caliber magazine

f. One loaded .308 caliber magazine

g. A clear bag containing ammunition

h. A loaded .40 caliber drum magazine

i. A box of 20 .308 caliber rounds of ammunition

j. A box of 40 9mm Luger rounds of ammunition

k. 96 rounds of 5.56 caliber ammunition

20. In the vehicles, police also recovered gas cans, a pair of binoculars, an empty holster, rubber gloves, sleeping bags, and other items.

21. None of the firearms located in the van were properly stored and/or out of reach of the occupants in a secure location, including the juvenile described above. None of the armed suspects ever provided a FID card or license to carry firearms from Massachusetts or any other state.

22. Therefore, there is probable cause to believe that the defendants committed the following crimes as a joint venture, arising out of the weapons and items seized from the van:

a. Possession of a Firearm (G.L. c. 269, § 10(a))

b. Possession of a Large Capacity Firearm (G.L. c. 269, § 10(m))

f.   Conspiracy to Possess and Improperly Store Firearms (G.L. c. 274, § 7)

23. Further, there is probable cause to believe that defendants Wilfredo Hernandez a/k/a Will Musa committed the crime of Possession Of A Firearm (G.L. c. 269, § 10(a)), arising out of his carrying the above-described pistol at the time of his arrest.

24. Further, there is probable cause to believe the following defendants committed the crime of Providing False Information to a Police Officer (G.L. c. 268, § 34A), by provided the aliases listed below during their arrest processing:

a.   Jamal Tavon Sanders LATIMER a/k/a Jamal Talib Abdulleh Bey
b.   Wilfredo HERNANDEZ a/k/a Will Musa
c.   Aaron Lamont JOHNSON a/k/a Tarrif Sharif Bey
d.   Brandon BRITTON a/k/a Messiah Bey
e.   Lamar DOW a/k/a Jamil

25. Finally, there is probable cause that each of the defendants committed the crimes of Wearing Body Armor during the Commission of a Felony (G.L. c. 269, § 10D) and conspiracy (c. 274, § 7)

APPLICATION FOR ~~CRIMINAL~~ COMPLAINT

APPLICATION NO. (COURT USE ONLY): 21SOCR1099

PAGE: 3 of 3

Trial Court of Massachusetts
District Court Department

Malden DC

The undersigned complainant, request that a criminal complaint issue against the accused charging the offense(s) listed below. If the accused **HAS NOT BEEN ARRESTED** and the charges involve:

☐ ONLY MISDEMEANOR(S), I request a hearing ☐ **WITHOUT NOTICE** because of an imminent threat of
☐ BODILY INJURY ☐ COMMISSION OF A CRIME ☐ FLIGHT ☐ **WITH NOTICE** to accused.
☐ ONE OR MORE FELONIES, I request a hearing ☐ **WITHOUT NOTICE** ☐ **WITH NOTICE** to accused.

☐ **WARRANT** is requested because prosecutor represents that accused may not appear unless arrested.

ARREST STATUS OF ACCUSED
☒ HAS ☐ HAS NOT been arrested

## INFORMATION ABOUT ACCUSED

NAME (FIRST MI LAST) AND ADDRESS

Jamel Tavon Sanders Latimer
aka Jamel Talib Abdullah Bey

BIRTH DATE: 4/17/92

SOCIAL SECURITY NUMBER:

PCF NO.:

MARITAL STATUS:

DRIVERS LICENSE NO.:

STATE:

GENDER: | HEIGHT: | WEIGHT: | EYES:

BIRTH STATE OR COUNTRY: | DAY PHONE:

HAIR: | RACE: | COMPLEXION: | SCARS/MARKS/TATTOOS: | INTERPRETER NEEDED (language): | FATHER'S NAME (FIRST MI LAST):

EMPLOYER/SCHOOL: | MOTHER'S MAIDEN NAME (FIRST MI LAST):

## CASE INFORMATION

PD: NP

COMPLAINANT NAME (FIRST MI LAST): Tpr Michael Sullivan #3055T

COMPLAINANT TYPE: ☒ POLICE ☐ CITIZEN ☐ OTHER

ADDRESS:

PLACE OF OFFENSE: I 95 Wakefield

OBTN: TJAH 2021

INCIDENT REPORT NO.: 2021AG006543

5887

CITATION NO(S):

| | OFFENSE CODE | DESCRIPTION | | OFFENSE DATE |
|---|---|---|---|---|
| 1 | 269 10 TT | Poss Ammo | | 7 3 21 |
| | VARIABLES (e.g. victim name, controlled substance, type and value of property, other variable information; see Complaint Language Manual): Various calibers | | | OFFENSE DATE |
| 2 | OFFENSE CODE | DESCRIPTION | | OFFENSE DATE |
| | VARIABLES | | | |
| 3 | OFFENSE CODE | DESCRIPTION | | |
| | VARIABLES | | | |

REMARKS:

COMPLAINANT'S SIGNATURE: X Tpr. M Neill #3885

DATE FILED: 7-6-21

DATE OF HEARING: | TIME OF HEARING: | COURT USE ONLY:

COURT USE ONLY: A HEARING UPON THIS COMPLAINT APPLICATION WILL BE HELD AT THE ABOVE COURT ADDRESS ON } AT

DATE: | CLERK/JUDGE:

## PROCESSING OF NON-ARREST APPLICATION (COURT USE ONLY)

NOTICE SENT OF CLERK'S HEARING SCHEDULED ON:

NOTICE SENT OF JUDGE'S HEARING SCHEDULED ON:

HEARING CONTINUED TO:

APPLICATION DECIDED WITHOUT NOTICE TO ACCUSED BECAUSE:
☐ IMMINENT THREAT OF: ☐ BODILY INJURY ☐ CRIME ☐ FLIGHT   BY ACCUSED
☐ FELONY CHARGED AND POLICE DO NOT REQUEST NOTICE
☐ FELONY CHARGED BY CIVILIAN; NO NOTICE AT CLERK'S DISCRETION

| DATE | COMPLAINT TO ISSUE | COMPLAINT DENIED | CLERK/JUDGE |
|---|---|---|---|
| 7.6.21 | ☒ PROBABLE CAUSE FOUND FOR ABOVE OFFENSE(S) NO(S) ☒ 1. ☐ 2. ☐ 3. BASED ON ☒ FACTS SET FORTH IN ATTACHED STATEMENT(S) ☐ TESTIMONY RECORDED: TAPE NO. ___ START NO. ___ END NO. ___ ☐ WARRANT ☐ SUMMONS TO ISSUE SCHEDULED ARRAIGNMENT DATE: | ☐ NO PROBABLE CAUSE FOUND ☐ REQUEST OF COMPLAINANT ☐ FAILURE TO PROSECUTE ☐ AGREEMENT OF BOTH PARTIES ☐ OTHER: COMMENT | SGJ |

DCCR-2 (07/11)

COURT COPY

www.mass.gov/courts/districtcour



# ARREST REPORT

State Police Danvers

485 Maple Street

Danvers, MA

(978) 538-6161

## CASE # 2021-0A6-006543

| | |
|---|---|
| Invest Officer: Trooper Ryan Casey ID# 4266 | Court: Malden DC |
| Agency: A-6 | |

Activity Date/Time 07/03/2021 0110     Incident Class: Traffic DMV

Location: RT 95 North, South of Exit 57, WAKEFIELD, MA

**Last:** **ABDULLAH-BEY**

**First:** **JAMHAL**

| | | | |
|---|---|---|---|
| Middle: | | | |
| Suffix: | | Race: | Black |
| DOB: | 07/17/1992 | Sex: | Male |
| Age: | 28 | Height: | 511 |
| SSN: | | Weight: | 170 |
| License #: | | Hair Color: | Black |
| Lic. State: | MA | Eye Color: | Brown |
| Address: | 255 MAIN STREET | Build: | Slender |
| City/Town: | PAWTUCKET | Complexion: | Dark |
| State: | RI | Marital Stat: | Married |
| Zip Code: | 02860 | Spouse: | REFUSED |
| Phone #: | 4014035176 | Father: | REFUSED |
| Occupation: | NON-PROFIT | Mother: | REFUSED |
| Employer: | SELF | Dependents: | |
| Emp. Add: | | Birth Place: | REFUSED |
| Emp. Phn: | | Citizenship: | USA |

| | |
|---|---|
| Custody Status: Held for Court | **OBTN: TSAH202105337** |
| Booking Officer: Trooper Tah Yem ID# 3905 | Booked @ MSP Danvers |
| Desk Officer: Trooper Robert Thompson ID# 4404 | |
| Photo Officer: Trooper Tah Yem ID# 3905 | Charge(s): |
| Miranda Given: N   Trooper Tah Yem ID# 3905 | 272-53-F DISORDERLY CONDUCT |
| Print Officer: | |
| Lang Rights: N/A | |
| Visible Injuries: N | |
| Positive Q5: N | |
| PREA Screening: Y   Trooper Tah Yem ID# 3905 | |
| ICE Detainer?:   N  Detainer#: | |
| Held on Detainer?: | |
| Phone Used: N | |
| Number Called: | |
| M/W: N | |
| Detox Notified: N/A | |
| Medications: NONE | |
| Offered BT: N/A | |
| Refused BT: | |
| BT Results: 0.000   0.000   0.000 | |
| Bailed To: | |

Status: Approved

Approved by: =Lieutenant Brian O'Neill ID= 2908

Trooper Ryan Casey ID# 4266                                        Supervisor

**APPLICATION FOR CRIMINAL COMPLAINT**

APPLICATION NO. (COURT USE ONLY) 2180CR1099

PAGE 2 of 3

Trial Court of Massachusetts
District Court Department

Malden DC

The undersigned complainant, request that a criminal complaint issue against the accused charging the offense(s) listed below. If the accused HAS NOT BEEN ARRESTED and the charges involve:

☐ ONLY MISDEMEANOR(S), I request a hearing ☐ WITHOUT NOTICE because of an imminent threat of
☐ BODILY INJURY ☐ COMMISSION OF A CRIME ☐ FLIGHT ☐ WITH NOTICE to accused.
☐ ONE OR MORE FELONIES, I request a hearing ☐ WITHOUT NOTICE ☐ WITH NOTICE to accused.

☐ WARRANT is requested because prosecutor represents that accused may not appear unless arrested.

ARREST STATUS OF ACCUSED
☒ HAS ☐ HAS NOT been arrested

## INFORMATION ABOUT ACCUSED

NAME (FIRST MI LAST) AND ADDRESS
Jamel Tevon Sanders Letimer
cka Jamel Talib Abdullah Bey

BIRTH DATE 4/17/92
PCF NO.
SOCIAL SECURITY NUMBER
MARITAL STATUS

DRIVERS LICENSE NO.
STATE

GENDER | HEIGHT | WEIGHT | EYES

HAIR | RACE | COMPLEXION | SCARS/MARKS/TATTOOS | INTERPRETER NEEDED (language) | BIRTH STATE OR COUNTRY | DAY PHONE

EMPLOYER/SCHOOL | MOTHER'S MAIDEN NAME (FIRST MI LAST) | FATHER'S NAME (FIRST MI LAST)

## CASE INFORMATION

COMPLAINANT NAME (FIRST MI LAST)
Tpr Michael Sullivan #3085

COMPLAINANT TYPE
☒ POLICE ☐ CITIZEN ☐ OTHER

PD MSP

ADDRESS

PLACE OF OFFENSE
I95 Wakefield

INCIDENT REPORT NO.
2021OAG006543

OBTN TSA# 2021
5337

CITATION NO(S).

| | OFFENSE CODE | DESCRIPTION | OFFENSE DATE |
|---|---|---|---|
| 1 | 264/10/D | Wear Body Armor During Felony | 7/3/21 |
| | VARIABLES (e.g. victim name, controlled substance, type and value of property, other variable information; see Complaint Language Manual) | | |
| 2 | 274/7/C | Conspiracy to Poss FA | 7/3/21 |
| | VARIABLES | | |
| 3 | 268/34/A | Give Fls Info to Police | 7/3/21 |
| | VARIABLES | | |

REMARKS

COMPLAINANT'S SIGNATURE
X Tpr Michael Sullivan #3885

DATE FILED 7-6-21

COURT USE ONLY → A HEARING UPON THIS COMPLAINT APPLICATION WILL BE HELD AT THE ABOVE COURT ADDRESS ON

DATE OF HEARING AT TIME OF HEARING

COURT USE ONLY

| DATE | PROCESSING OF NON-ARREST APPLICATION (COURT USE ONLY) | CLERK/JUDGE |
|---|---|---|
| | NOTICE SENT OF CLERK'S HEARING SCHEDULED ON: | |
| | NOTICE SENT OF JUDGE'S HEARING SCHEDULED ON: | |
| | HEARING CONTINUED TO: | |
| | APPLICATION DECIDED WITHOUT NOTICE TO ACCUSED BECAUSE: | |
| | ☐ IMMINENT THREAT OF ☐ BODILY INJURY ☐ CRIME ☐ FLIGHT BY ACCUSED | |
| | ☐ FELONY CHARGED AND POLICE DO NOT REQUEST NOTICE | |
| | ☐ FELONY CHARGED BY CIVILIAN; NO NOTICE AT CLERK'S DISCRETION | |

| DATE | COMPLAINT TO ISSUE | COMPLAINT DENIED | CLERK/JUDGE |
|---|---|---|---|
| 7.6.21 | ☑ PROBABLE CAUSE FOUND FOR ABOVE OFFENSE(S) NO(S) ☑ 1. ☑ 2. ☑ 3. BASED ON ☑ FACTS SET FORTH IN ATTACHED STATEMENT(S) ☐ TESTIMONY RECORDED: TAPE NO. ___ START NO. ___ END NO. ___ ☐ WARRANT ☐ SUMMONS TO ISSUE SCHEDULED ARRAIGNMENT DATE: | ☐ NO PROBABLE CAUSE FOUND ☐ REQUEST OF COMPLAINANT ☐ FAILURE TO PROSECUTE ☐ AGREEMENT OF BOTH PARTIES ☐ OTHER: COMMENT | SGW |

DCCR-2 (07/11)

# APPLICATION FOR CRIMINAL COMPLAINT

APPLICATION NO. (COURT USE ONLY) 2150 CR 1099

PAGE 1 of 3

Trial Court of Massachusetts
District Court Department

Malden DC

I, the undersigned complainant, request that a criminal complaint issue against the accused charging the offense(s) listed below. If the accused **HAS NOT BEEN ARRESTED** and the charges involve:

☐ **ONLY MISDEMEANOR(S)**, I request a hearing ☐ **WITHOUT NOTICE** because of an imminent threat of
  ☐ **BODILY INJURY** ☐ **COMMISSION OF A CRIME** ☐ **FLIGHT** ☐ **WITH NOTICE** to accused.
☐ **ONE OR MORE FELONIES**, I request a hearing ☐ **WITHOUT NOTICE** ☐ **WITH NOTICE** to accused.

☐ **WARRANT** is requested because prosecutor represents that accused may not appear unless arrested.

ARREST STATUS OF ACCUSED
☒ **HAS** ☐ **HAS NOT** been arrested

## INFORMATION ABOUT ACCUSED

| NAME (FIRST MI LAST) AND ADDRESS | BIRTH DATE 4\17\92 | SOCIAL SECURITY NUMBER |
|---|---|---|
| Jamal Tevan Sanders Latimer | PCF NO. | MARITAL STATUS |
| 255 Main St. | | |
| Pawtucket RI   02860 | DRIVERS LICENSE NO. | STATE |
| AKA A/K/a  Jamal Talib Abdullah Bey | GENDER M   HEIGHT 5'11   WEIGHT 170   EYES Bc | |

| HAIR Bl | RACE Bl | COMPLEXION Dark | SCARS/MARKS/TATTOOS | INTERPRETER NEEDED (language) no | BIRTH STATE OR COUNTRY | DAY PHONE |
|---|---|---|---|---|---|---|

| EMPLOYER/SCHOOL | MOTHER'S MAIDEN NAME (FIRST MI LAST) | FATHER'S NAME (FIRST MI LAST) |
|---|---|---|

## CASE INFORMATION

| COMPLAINANT NAME (FIRST MI LAST) | COMPLAINANT TYPE | PD |
|---|---|---|
| Tpr Michael Sullivan #3885 | ☒ POLICE ☐ CITIZEN ☐ OTHER | MSP |

| ADDRESS | PLACE OF OFFENSE |
|---|---|
| MSP - | Rt 95, Wakefield |
| 15 Commonwealth Ave | INCIDENT REPORT NO. 2021-OAG-00654   OBTN TSAH2021 5337 |
| Woburn MA  01801 | CITATION NO(S). |

| | OFFENSE CODE | DESCRIPTION | OFFENSE DATE |
|---|---|---|---|
| 1 | 269 10 AA | Poss. LG. Cap. F/A | 7/3/21 |
| | VARIABLES (e.g. victim name, controlled substance, type and value of property, other variable information; see Complaint Language Manual) | | |
| 2 | 269 10 J | Poss FA | 7/3/21 |
| | VARIABLES | | |
| 3 | 140 131L A | Improper Storage of FA | 7/3/21 |
| | VARIABLES | | |

| REMARKS | COMPLAINANT'S SIGNATURE X Tpr MSull  #3885 | DATE FILED 7-6-21 |
|---|---|---|

| COURT USE ONLY | A HEARING UPON THIS COMPLAINT APPLICATION WILL BE HELD AT THE ABOVE COURT ADDRESS ON | DATE OF HEARING | AT | TIME OF HEARING | COURT USE ONLY |
|---|---|---|---|---|---|

## PROCESSING OF NON-ARREST APPLICATION (COURT USE ONLY)

| DATE | | CLERK/JUDGE |
|---|---|---|
| | NOTICE SENT OF CLERK'S HEARING SCHEDULED ON: | |
| | NOTICE SENT OF JUDGE'S HEARING SCHEDULED ON: | |
| | HEARING CONTINUED TO: | |
| | APPLICATION DECIDED WITHOUT NOTICE TO ACCUSED BECAUSE: | |
| | ☐ IMMINENT THREAT OF ☐ BODILY INJURY ☐ CRIME ☐ FLIGHT  BY ACCUSED | |
| | ☐ FELONY CHARGED AND POLICE DO NOT REQUEST NOTICE | |
| | ☐ FELONY CHARGED BY CIVILIAN; NO NOTICE AT CLERK'S DISCRETION | |

| DATE | COMPLAINT TO ISSUE | COMPLAINT DENIED | CLERK/JUDGE |
|---|---|---|---|
| 7.6.21 | ☒ PROBABLE CAUSE FOUND FOR ABOVE OFFENSE(S) NO(S). ☒1. ☒2. ☒3.  BASED ON ☒ FACTS SET FORTH IN ATTACHED STATEMENT(S) ☐ TESTIMONY RECORDED: TAPE NO. _____ START NO. _____ END NO. _____ ☐ WARRANT ☐ SUMMONS TO ISSUE SCHEDULED ARRAIGNMENT DATE: | ☐ NO PROBABLE CAUSE FOUND ☐ REQUEST OF COMPLAINANT ☐ FAILURE TO PROSECUTE ☐ AGREEMENT OF BOTH PARTIES ☐ OTHER: COMMENT | SGJ |

DCCR-2 (07/11)

COURT COPY

www.mass.gov/courts/districtcourt

**APPLICATION FOR CRIMINAL COMPLAINT**

DOCKET NO. (COURT USE ONLY) 2150CR1097   1 of 3

Trial Court of Massachusetts
District Court Department

Malden DC

I, the undersigned complainant, request that a criminal complaint issue against the accused charging the offense(s) listed below. If the accused HAS NOT BEEN ARRESTED and the charges involve:

☐ ONLY MISDEMEANOR(S), I request a hearing ☐ WITHOUT NOTICE because of an imminent threat of ☐ BODILY INJURY ☐ COMMISSION OF A CRIME ☐ FLIGHT ☐ WITH NOTICE to accused.
☐ ONE OR MORE FELONIES, I request a hearing ☐ WITHOUT NOTICE ☐ WITH NOTICE to accused.

☐ WARRANT is requested because prosecutor represents that accused may not appear unless arrested.

ARREST STATUS OF ACCUSED
☑ HAS   ☐ HAS NOT been arrested

### INFORMATION ABOUT ACCUSED

| NAME (FIRST MI LAST) AND ADDRESS | |
|---|---|
| Quinn Cumberlander 106 Bogman St Providence RI 02860 AKA Quinn Khabir | BIRTH DATE 4-15-81 |

| SOCIAL SECURITY NUMBER | |
|---|---|
| PCF NO. | MARITAL STATUS Single |
| DRIVERS LICENSE NO. | STATE |

| GENDER M | HEIGHT 6'00" | WEIGHT 200 | EYES Brw |
|---|---|---|---|

| HAIR Blk | RACE Blk | COMPLEXION Dark | SCARS/MARKS/TATTOOS | INTERPRETER NEEDED (language) No |
|---|---|---|---|---|

| BIRTH STATE OR COUNTRY | DAY PHONE |
|---|---|

| EMPLOYER/SCHOOL | MOTHER'S MAIDEN NAME (FIRST MI LAST) | FATHER'S NAME (FIRST MI LAST) |
|---|---|---|

### CASE INFORMATION

| COMPLAINANT NAME (FIRST MI LAST) Tpr. Michael Sullivan #3885 | COMPLAINANT TYPE ☑ POLICE ☐ CITIZEN ☐ OTHER | PD MSP |
|---|---|---|

| ADDRESS Middlesex Dist. Att office 15 Commonwealth Ave Woburn, MA 01801 | PLACE OF OFFENSE Rt. 95 Wakefield |
|---|---|
| | INCIDENT REPORT NO. 2021-044-006238   OBTN TSH3202104849 |
| | CITATION NO(S). |

| | OFFENSE CODE | DESCRIPTION | OFFENSE DATE |
|---|---|---|---|
| 1 | 269/10/AA | Poss, Lg, Cap F/A | 7-3-21 |
| | VARIABLES (e.g. victim name, controlled substance, type and value of property; other variable information; see Complaint Language Manual) | | |
| 2 | 269/10/J | Poss F/A | 7-3-21 |
| | VARIABLES | | |
| 3 | 140/131L/A | Improper Storage of F/A | 7-3-21 |
| | VARIABLES | | |

| REMARKS | COMPLAINANT'S SIGNATURE X Tpr M Sull #3885 | DATE FILED 7-6-21 |
|---|---|---|

| COURT USE ONLY | A HEARING UPON THIS COMPLAINT APPLICATION WILL BE HELD AT THE ABOVE COURT ADDRESS ON | DATE OF HEARING | TIME OF HEARING AT | COURT USE ONLY |
|---|---|---|---|---|

### PROCESSING OF NON-ARREST APPLICATION (COURT USE ONLY)

| DATE | | CLERK/JUDGE |
|---|---|---|
| | NOTICE SENT OF CLERK'S HEARING SCHEDULED ON: | |
| | NOTICE SENT OF JUDGE'S HEARING SCHEDULED ON: | |
| | HEARING CONTINUED TO: | |
| | APPLICATION DECIDED WITHOUT NOTICE TO ACCUSED BECAUSE: ☐ IMMINENT THREAT OF ☐ BODILY INJURY ☐ CRIME ☐ FLIGHT BY ACCUSED ☐ FELONY CHARGED AND POLICE DO NOT REQUEST NOTICE ☐ FELONY CHARGED BY CIVILIAN; NO NOTICE AT CLERK'S DISCRETION | |

| DATE | COMPLAINT TO ISSUE | COMPLAINT DENIED | CLERK/JUDGE |
|---|---|---|---|
| 7/6/21 | ☑ PROBABLE CAUSE FOUND FOR ABOVE OFFENSE(S) NO(S). ☑ 1 ☑ 2 ☐ 3 BASED ON ☑ FACTS SET FORTH IN ATTACHED STATEMENT(S) ☐ TESTIMONY RECORDED: TAPE NO. _____ START NO. _____ END NO. _____ ☐ WARRANT ☐ SUMMONS TO ISSUE SCHEDULED ARRAIGNMENT DATE: 7/6/21 | ☐ NO PROBABLE CAUSE FOUND ☐ REQUEST OF COMPLAINANT ☐ FAILURE TO PROSECUTE ☐ AGREEMENT OF BOTH PARTIES ☐ OTHER: COMMENT | JB |

DCCR-2 (07/11)

COURT COPY

APPLICATION FOR
CRIMINAL COMPLAINT

APPLICATION NO. (COURT USE ONLY) 21SDCR1697

PAGE 2 of 3

Trial Court of Massachusetts
District Court Department

Malden DC

The undersigned complainant, request that a criminal complaint issue against the accused charging the offense(s) listed below. If the accused HAS NOT BEEN ARRESTED and the charges involve:

ONLY MISDEMEANOR(S), I request a hearing ☐ WITHOUT NOTICE because of an imminent threat of ☐ BODILY INJURY ☐ COMMISSION OF A CRIME ☐ FLIGHT ☐ WITH NOTICE to accused.
ONE OR MORE FELONIES, I request a hearing ☐ WITHOUT NOTICE ☐ WITH NOTICE to accused.

☐ WARRANT is requested because prosecutor represents that accused may not appear unless arrested.

ARREST STATUS OF ACCUSED
☑ HAS   ☐ HAS NOT been arrested

### INFORMATION ABOUT ACCUSED

NAME (FIRST MI LAST) AND ADDRESS
Quinn Cumberlander
106 Bogman St
Providence, RI 02860
AKA Quinn Khabir

BIRTH DATE 4-15-81
SOCIAL SECURITY NUMBER
PCF NO.
MARITAL STATUS S
DRIVERS LICENSE NO.
STATE
GENDER M   HEIGHT 600   WEIGHT 200   EYES BRW

HAIR BLK   RACE BLK   COMPLEXION Dark   SCARS/MARKS/TATTOOS   INTERPRETER NEEDED (language) NO   BIRTH STATE OR COUNTRY   DAY PHONE

EMPLOYER/SCHOOL   MOTHER'S MAIDEN NAME (FIRST MI LAST)   FATHER'S NAME (FIRST MI LAST)

### CASE INFORMATION

COMPLAINANT NAME (FIRST MI LAST)
Tpr. Michael Sullivan #3885

ADDRESS
MSP-MDAO

COMPLAINANT TYPE
☑ POLICE   ☐ CITIZEN   ☐ OTHER   RD MSP

PLACE OF OFFENSE
Rt. 95 Wakefield

INCIDENT REPORT NO. 2021-OA4-006238   OBTN TSA3202104849

CITATION NO(S).

| | OFFENSE CODE | DESCRIPTION | OFFENSE DATE |
|---|---|---|---|
| 1 | 269/10/D | Wear Body Armor During Felony | 7-3-21 |
| | VARIABLES (e.g. victim name, controlled substance, type and value of property, other variable information See Complaint Language Manual) | | |
| 2 | 274/7/C | Conspiracy | 7-3-21 |
| | VARIABLES to Poss F/A | | |
| 3 | 268/34/A | Given False info to Police | 7-3-21 |
| | VARIABLES | | |

REMARKS

COMPLAINANT'S SIGNATURE X Tpr. M #3885   DATE FILED 7-6-21

COURT USE ONLY   A HEARING UPON THIS COMPLAINT APPLICATION WILL BE HELD AT THE ABOVE COURT ADDRESS ON   DATE OF HEARING   AT   TIME OF HEARING   COURT USE ONLY

| DATE | PROCESSING OF NON-ARREST APPLICATION (COURT USE ONLY) | CLERK/JUDGE |
|---|---|---|
| | NOTICE SENT OF CLERK'S HEARING SCHEDULED ON: | |
| | NOTICE SENT OF JUDGE'S HEARING SCHEDULED ON: | |
| | HEARING CONTINUED TO: | |
| | APPLICATION DECIDED WITHOUT NOTICE TO ACCUSED BECAUSE: ☐ IMMINENT THREAT OF ☐ BODILY INJURY ☐ CRIME ☐ FLIGHT BY ACCUSED ☐ FELONY CHARGED AND POLICE DO NOT REQUEST NOTICE ☐ FELONY CHARGED BY CIVILIAN; NO NOTICE AT CLERK'S DISCRETION | |

| DATE | COMPLAINT TO ISSUE | COMPLAINT DENIED | CLERK/JUDGE |
|---|---|---|---|
| 7/6/21 | ☑ PROBABLE CAUSE FOUND FOR ABOVE OFFENSE(S) NO(S). ☑ 1. ☑ 2. ☑ 3. BASED ON ☑ FACTS SET FORTH IN ATTACHED STATEMENT(S) ☐ TESTIMONY RECORDED: TAPE NO. START NO. END NO. ☐ WARRANT ☐ SUMMONS TO ISSUE SCHEDULED ARRAIGNMENT DATE: 7/6/21 | ☐ NO PROBABLE CAUSE FOUND ☐ REQUEST OF COMPLAINANT ☐ FAILURE TO PROSECUTE ☐ AGREEMENT OF BOTH PARTIES ☐ OTHER. COMMENT | JMB |

DCCR-2 (07/11)

COURT COPY

www.mass.gov/courts/districtcourt

APPLICATION FOR
CRIMINAL COMPLAINT

APPLICATION NO. (COURT USE ONLY)
2150CR1097

PAGE
3 of 3

Trial Court of Massachusetts
District Court Department

Malten DC

The undersigned complainant, request that a criminal complaint issue against the accused charging the offense(s) listed below. If the accused HAS NOT BEEN ARRESTED and the charges involve:

☐ ONLY MISDEMEANOR(S), I request a hearing ☐ WITHOUT NOTICE because of an imminent threat of ☐ BODILY INJURY ☐ COMMISSION OF A CRIME ☐ FLIGHT ☐ WITH NOTICE to accused.
☐ ONE OR MORE FELONIES, I request a hearing ☐ WITHOUT NOTICE ☐ WITH NOTICE to accused.

☐ WARRANT is requested because prosecutor represents that accused may not appear unless arrested.

ARREST STATUS OF ACCUSED
☑ HAS   ☐ HAS NOT been arrested

## INFORMATION ABOUT ACCUSED

NAME (FIRST MI LAST) AND ADDRESS
Quinn Cumberlander
106 Bogman St
Providence, RI 02860
AKA: Quinn Khabir

BIRTH DATE
4/15/1981

SOCIAL SECURITY NUMBER

PCF NO.

MARITAL STATUS
Single

DRIVERS LICENSE NO.

STATE

GENDER
M

HEIGHT
6 00

WEIGHT
200

EYES
BRW

HAIR
BLK

RACE
BLK

COMPLEXION
Dark

SCARS/MARKS/TATTOOS

INTERPRETER NEEDED (language)
NO

BIRTH STATE OR COUNTRY

DAY PHONE

EMPLOYER/SCHOOL

MOTHER'S MAIDEN NAME (FIRST MI LAST)

FATHER'S NAME (FIRST MI LAST)

## CASE INFORMATION

COMPLAINANT NAME (FIRST MI LAST)
Tpr. Michael Sullivan #3885

ADDRESS
15 Commonwealth Ave
Woburn, MA 01801

COMPLAINANT TYPE
☑ POLICE ☐ CITIZEN ☐ OTHER
MSP

PLACE OF OFFENSE
Rte. 95 Wakefield

INCIDENT REPORT NO.
2021-DAY-006238

OBTN
TSA 3202104849

CITATION NO(S).

| | OFFENSE CODE | DESCRIPTION | | OFFENSE DATE |
|---|---|---|---|---|
| 1 | 269/10/TT | Poss'n of Ammunition | | 7/3/21 |
| | VARIABLES (e.g. victim name, controlled substance type and value of property, other variable information; see Complaint Language Manual) Various (Calibers) | | | |
| 2 | OFFENSE CODE | DESCRIPTION | | OFFENSE DATE |
| | VARIABLES | | | |
| 3 | OFFENSE CODE | DESCRIPTION | | OFFENSE DATE |
| | VARIABLES | | | |

REMARKS

COMPLAINANT'S SIGNATURE
X Tpr. Mull #3885

DATE FILED
7-6-21

COURT USE ONLY | A HEARING UPON THIS COMPLAINT APPLICATION WILL BE HELD AT THE ABOVE COURT ADDRESS ON } | DATE OF HEARING | AT | TIME OF HEARING | COURT USE ONLY

CLERK/JUDGE

## PROCESSING OF NON-ARREST APPLICATION (COURT USE ONLY)

| DATE | | CLERK/JUDGE |
|---|---|---|
| | NOTICE SENT OF CLERK'S HEARING SCHEDULED ON: | |
| | NOTICE SENT OF JUDGE'S HEARING SCHEDULED ON: | |
| | HEARING CONTINUED TO: | |
| | APPLICATION DECIDED WITHOUT NOTICE TO ACCUSED BECAUSE: ☐ IMMINENT THREAT OF ☐ BODILY INJURY ☐ CRIME ☐ FLIGHT BY ACCUSED ☐ FELONY CHARGED AND POLICE DO NOT REQUEST NOTICE ☐ FELONY CHARGED BY CIVILIAN; NO NOTICE AT CLERK'S DISCRETION | |

| DATE | COMPLAINT TO ISSUE | COMPLAINT DENIED | CLERK/JUDGE |
|---|---|---|---|
| 7/6/21 | ☑ PROBABLE CAUSE FOUND FOR ABOVE OFFENSE(S) NO(S). ☑ 1. ☑ 2 ☐ 3 BASED ON ☑ FACTS SET FORTH IN ATTACHED STATEMENT(S) ☐ TESTIMONY RECORDED TAPE NO. START NO. END NO. ☐ WARRANT ☑ SUMMONS TO ISSUE SCHEDULED ARRAIGNMENT DATE: 7/6/21 | ☐ NO PROBABLE CAUSE FOUND ☐ REQUEST OF COMPLAINANT ☐ FAILURE TO PROSECUTE ☐ AGREEMENT OF BOTH PARTIES ☐ OTHER: COMMENT | JLB |

COURT COPY

DCCR-2 (07/11)

www.mass.gov/courts/districtcourt



# ARREST REPORT
## State Police Medford

520 Fellsway
Medford, MA
(781) 396-0100

CASE # 2021-0A4-006238

Invest Officer: Trooper Matthew McDermott ID# 4176
Agency:   A-4                                      Court: Malden DC

Activity Date/Time  07/03/2021 1100
Incident Class: Traffic Pedestrian

Location: A-4, MEDFORD, MA

**Last:** CUMBERLANDER

**First:** QUINN

Middle:
Suffix:
DOB:        04/15/1981
Age:        40
SSN:
License #:
Lic. State:
Address:      106 BOGMAN ST
City/Town:    PROVIDENCE
State:        RI
Zip Code:     02860
Phone #:
Occupation:   CONTRACT WORK
Employer:
Emp. Add:
Emp. Phn:

Race:        Black
Sex:         Male
Height:      600
Weight:      200
Hair Color:  Black
Eye Color:   Brown
Build:       Medium
Complexion:  Dark
Marital Stat: Single
Spouse:
Father:
Mother:
Dependents:  4
Birth Place:
Citizenship: USA

Custody Status:
Booking Officer:   Trooper Matthew McDermott ID# 4176
Desk Officer:      Trooper Brendan Crowther ID# 4468
Photo Officer:     Trooper Matthew McDermott ID# 4176
Miranda Given:  Y   Trooper Matthew McDermott ID#
Print Officer:
Lang Rights:
Visible Injuries:  N
Positive Q5:       N
PREA Screening:  Y   Trooper Matthew McDermott ID# 4176
ICE Detainer?:     N   Detainer#:
Held on Detainer?:
Phone Used:        N
Number Called:
M/W:               N
Detox Notified:
Medications:       NONE
Offered BT:
Refused BT:
BT Results:     0.000   0.000   0.000
Bailed To:

### OBTN: TSH3202104849
Booked @ MSP Medford

Charge(s):

269-10-H-1 POSS. OF AMMO WITHOUT FID CARD
269-10-A POSSESSION / CARRYING A FIREARM
269-10D BODY ARMOR, USE IN FELONY
274-7 CONSPIRACY
140-131L-A FIREARM, STORE IMPROP
268-34A FALSE NAME/SSN, ARRESTEE FURNISH

Status: Approved
Approved by: #Sergeant Christopher Dougherty ID# 1511

Trooper Matthew McDermott ID# 4176                              Supervisor

DCCR-2 (07/11)                    COURT COPY                    www.mass.gov/courts/ssh-secur8